**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-00143-MSK-BNB**

**ANIMAL CARE SYSTEMS, INC.,**

      **Plaintiff,**

**v.**

**HYDROPAC/LAB PRODUCTS, INC.,**

      **Defendant.**

----------
and
----------

**Civil Action No. 13-cv-00415-MSK-BNB**

**HYDROPAC/LAB PRODUCTS, INC.,**

      **Plaintiff,**

**v.**

**ANIMAL CARE SYSTEMS, INC.,**

      **Defendant.**

_____

**OPINION AND ORDER GRANTING, IN PART, MOTIONS TO CONSOLIDATE
CASES AND DENYING MOTIONS TO DISMISS**

_____

      **THIS MATTER** comes before the Court pursuant to Hydropac/Lab Products, Inc.'s

("Hydropac") Motion to Consolidate Cases and Align Parties (**# 15** in 13-cv-143 and **# 15** in 13-

cv-415), Animal Care System, Inc.'s ("Animal Care") responses, and Hydropac's replies; and

Animal Care's Motion to Dismiss (**# 23** in 13-cv-143 and **# 19** in 13-cv-415), Hydopac's

responses, and Animal Care's replies.

### A.  Pertinent Procedural History

Hydropac commenced this action against Animal Care in the United States Court for the District of Delaware on November 20, 2012.  Hydropac alleged that Animal Care was infringing on various patents.   Citing to its lack of sales in Delaware, Animal Care responded with a Motion to Dismiss for lack of personal jurisdiction or, in the alternative, to Transfer venue of the case to Colorado.

While Animal Care's Motion to Dismiss or to Transfer was pending in the Delaware action, Animal Care commenced Case No. 13-cv-143 against Hydropac in this Court.  Animal care requests declaratory judgments that its products do not infringe on Hydropac's patents and that Hydropac's patents are invalid.

Ultimately, the parties agreed that the Delaware action should be transferred to Colorado, and the Delaware court granted their stipulated motion to transfer venue.  The transferred case was given Case No. 13-cv-415 and assigned to the undersigned.

### B.  Motion to Consolidate and Align Parties

Hydropac moves to consolidate the two actions into a single case.  Animal Care concurs in that request.  One would think that upon such agreement that the cases would be consolidated into the earliest filed case before this Court (as is the usual practice).   However, the parties cannot agree as to that.

Hydropac requests that the consolidation be done in such a way "such that [Hydropac] is the named Plaintiff/Counterclaim-Defendant in the consolidated action."  Hydropac argues that the "primary purpose" of this litigation is the adjudication of its infringement claims, and thus, it is the "natural plaintiff," and points out that it was the first to commence suit (albeit in Delaware).  *Citing Plumtree Software, Inc. v. Datamize, LLC*, 2003 WL 25841157 (N.D. Ca.

2

Oct. 6, 2003).  Animal Care argues that it should be the plaintiff in the consolidated case because it is the nominal plaintiff in the earliest-filed case in this Court.   The parties' subsequent briefing, in excess of 50 pages, addresses which entity should be the plaintiff in the consolidated action.

The Court agrees with the parties that consolidation is appropriate, but is mystified by the remaining portion of the parties' dispute.  Essentially, the parties each want to be designated as the plaintiff and object to being designated as the defendant.  Neither party identifies any legal right that is impacted by designation as a  "plaintiff" as compared to a "defendant," and neither offers any practical consideration that is impacted by the designations.

The Court has reviewed the *Plumtree* decision, to which the parties refer.[1]  It articulates several considerations that justified realignment of parties in that case,  including the burden of proof, the "logical presentation of the evidence at trial," the need for consistency with local patent rules, and the desire to discourage forum-shopping.   2003 WL 25841157 at * 3-5. However, such concerns are not applicable here.

Arguably, alignment of parties should follow the burden of proof with the party bearing the burden being the   But these actions include claims as to which both parties have burdens of proof:  Hydropac must prove its claims that Animal Care infringed its patents, *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324,1 333 (Fed. Cir. 2006), and Animal Care must prove its claims that  Hydropac's patents are invalid, *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d

---

[1]     This Court finds the very fundamental underpinnings of *Plumtree* to be unpersuasive. The Court in *Plumtree* assumed that, because courts often realign parties in order to maintain diversity jurisdiction (where the proper alignment of parties has an actual substantive significance), courts can use the same power to realign parties for more nebulous reasons. *Plumtree* cites no significant authority for the conclusion that realignment for non-jurisdictional purposes is appropriate (nor clearly delineating the considerations that might warrant such a realignment), and thus, this Court is reluctant to give any weight to *Plumtree*.

1348, 1359 (Fed. Cir. 2007).[2]   Given that both parties have proof obligations, there is no particular logic that places one in a more "natural" position as plaintiff.

Thus, the Court grants, in part, Hydropac's motion to consolidate, but declines to undertake any realignment of the parties or otherwise disrupt the current status of the parties in their respective cases.  Future filings in this case will bear both captions, in the same form as this Order does, but for ease of docket administration, the parties and the Clerk of the Court shall only record those filings in Case No. 13-cv-143; the docket for Case No. 13-cv-415 shall merely direct the reader to the docket of Case No. 13-cv-143 for all further proceedings in both actions.[3] In all other respects, the parties shall retain the same designations and positions respective to each other that they currently occupy.

### B.  Motion to Dismiss

Animal Care moves to dismiss Hydropac's claims (including, as appropriate, its counterclaims) for unjust enrichment and indirect infringement, alleging that those claims fail to state a cause of action under Fed. R. Civ. P. 12(b)(6).

In deciding a Rule 12(b)(6) motion, the Court  accepts all well-plead allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th

---

[2]     This Court agrees to some extent with *Plumtree*'s observation that, where there are simultaneous claims for, on the one hand, patent infringement, and, on the other hand, a claim for a declaration of noninfringement, the party asserting infringement bears the burden of proof on both claims.  *Id.* at * 4.  However, here, Animal Care's request for a declaratory judgment goes beyond simply asserting noninfringement, and actively seeks a declaration that Hydropac's patents are invalid.  This is enough for Animal Care to assume its own burden of proof on the invalidity claim.  No claims of invalidity appear to have been at issue in *Plumtree*.

[3]     This will cure the situation presented here, where Hydropac has filed essentially identical motions in both cases, but those motions have different docket numbers depending on the case number in which they appear.

Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th

Cir. 1999).  The Court must limit its consideration to the four corners of the Amended

Complaint, any documents attached thereto, and any external documents that are referenced in

the Amended Complaint and whose accuracy is not in dispute.  *Oxendine v. Kaplan*, 241 F.3d

1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002);

*Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its

face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court

first discards those averments in the Complaint that are merely legal conclusions or "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at

1949-50.  The Court takes the remaining, well-pled factual contentions, treats them as true, and

ascertains whether those facts (coupled, of course, with the law establishing the requisite

elements of the claim) support a claim that is "plausible" or whether the claim being asserted is

merely "conceivable" or "possible" under the facts alleged.  *Id.* at 1950-51.  What is required to

reach the level of "plausibility" varies from context to context, but generally, allegations that are

"so general that they encompass a wide swath of conduct, much of it innocent," will not be

sufficient.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

In addition to its claims that Animal Care has infringed on its patents, Hydropac also

asserts a common-law claim for unjust enrichment.  Hydropac contends that in or about 2008,

Animal Care hired Michael O'Connor, a former Hydropac Sales Executive, that Mr. O'Connor

was privy to "confidential and proprietary information" relating "to the design, development,

marketing, and sale and/or offer for sale of" Hydropac's products, that Mr. O'Connor improperly

conveyed such confidential material to Animal Care,  and that Animal Care used such

confidential information for its own commercial advantage.  Animal Care seeks dismissal of this

claim because: (i) it fails to adequately allege facts that would support a claim for unjust

enrichment; and (ii) it is preempted by the terms of Colorado's Uniform Trade Secrets Act

("CUTSA"), C.R.S. § 7-74-108.

To state a claim of unjust enrichment under Colorado law, a plaintiff must allege facts

showing: (i) that the defendant received a benefit; (ii) at the plaintiff's expense; (iii) under

circumstances that would make it unjust for the defendant to retain the benefit without

compensating the plaintiff.  *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo.App. 2011).

The pertinent paragraphs of Hydropac's Amended Complaint and its Amended Answer

with Counterclaims are as follows (the Court will use the paragraph numbers from Hydropac's

Amended Complaint)**:**

> 140.  Upon information and belief, Mr. O'Connor . . . unlawfully
> disclose[d] [Hydropac's] Confidential Material to [Animal Care],
> which was used by [Animal Care] to [Hydropac's] detriment.

> 141.  Upon information and belief, [Animal Care] used
> [Hydropac's] Confidential Material to copy [Hydropac's] products,
> to expedite the time to market of such copies, and to gain an unfair
> competitive advantage in the marketplace to [Hydropac's]
> detriment.

> 142.  For example, upon information and belief, Animal Care
> unlawfully used [Hydropac's] Confidential Material to develop
> suppliers, training techniques, and sales information in connection
> with and to develop its OptiQUENCH water delivery system and
> related products, which use certain non-public information
> regarding [Hydropac's] suppliers, training techniques, and sales
> information, to unfairly compete with [Hydropac].

Paragraphs 140 and 141 are nothing more than conclusions, the kind *Iqbal* requires this

Court to disregard.  Although they are stated "upon information and belief," Hydropac does not

set forth the particular facts that led it to believe that Mr. O'Connor disclosed the information to

Animal Care, nor that Animal Care made use of Hydropac's confidential information, nor

otherwise elevate that allegation above the "formulaic recitation of the elements of a cause of

action." These paragraphs vaguely suggest that Animal Care was able to bring unspecified

products to market faster than would normally be considered possible, but Hydropac does not

identify what Animal Care products appeared in the market on an accelerated time frame,

identify the normal time to bring such a product to market and the time it took Animal Care to do

so, or tie the ability to bring that product to market to the types of confidential information that

Mr. O'Connor possessed. Without such information, Paragraphs 140 and 141 are nothing more

than an "unadorned the-defendant-unlawfully-harmed-me accusation" of the type that *Iqbal*

rejects. *Id.*

Paragraph 142 does provide some specific factual detail, indicating that Animal Care

used Hydropac's confidential information in several respects: to develop the OptiQUENCH

product itself, and to develop supplier networks, training materials, and sales information. The

former reference – that Animal Care developed the OptiQUENCH product by exploiting

Hydropac's confidential materials, is somewhat problematic. The remainder of Hydropac's

Amended Complaint appears to contend that Animal Care developed the OptiQUENCH system

by referencing Hydropac's <u>patents</u>, not non-patent confidential information in Mr. O'Connor's

possession. Each of Hydropac's patent infringement claims allege that Animal Care infringed on

various Hydropac patents by producing "products embodying the patented invention, including

without limitation the OptiQUENCH water delivery system and related products, such as water

valves." It is essential that Hydropac's unjust enrichment claim differentiate between the extent

to which Animal Care developed the OptiQUENCH device based on Hydropac's <u>patents</u> and the

extent to which it developed the device based on confidential Hydropac information known to

Mr. O'Connor.  Information and methods disclosed in a patent are, by definition, not "confidential."[4]  *See e.g. Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329-30 (Fed. Cir. 2013), *citing On-Line Tech., Inc. v. Bodenseewerk Perkin-Elmer GmbH,* 386 F.3d 1133, 1141 (Fed. Cir. 2004) ("After a patent has issued, the information contained within it is ordinarily regarded as public and not subject to protection as a trade secret").  The Court will assume that Hydropac's unjust enrichment claim is <u>not</u> predicated upon any allegation that the "confidential material" exploited by Animal Care is information contained within Hydropac's patents, and instead, that Mr. O'Connor contributed additional, non-public information about the design and manufacture of Hydropac's products to Animal Care's development of the OptiQUENCH product.  At the pleading stage, this is sufficient to put Animal Care on notice of the nature of Hydropac's unjust enrichment claim as it relates to the OptiQUENCH product.

The Court also finds that the Amended Complaint suffices to address other plausible assertions of unjust enrichment.  Taken in the light most favorable to Hydropac, Paragraph 142 alleges that Mr. O'Connor had knowledge of confidential information relating to Hydropac's supplier network, training techniques, and sales information; that Mr. O'Connor conveyed that information to Animal Care; and that Animal Care made use of that information to develop techniques and information that it would not otherwise have had.  These allegations are sufficient to state a claim for unjust enrichment.

---

[4]     Indeed, this is the very premise of the patent system.  The inventor of a novel process may elect to keep that process confidential, but runs the risk of others discovering it independently and exploiting it.  The patent system allows the inventor the opportunity to publicly disclose the process, surrendering the confidentiality of that information to the public, but rewards the inventor for doing so by granting the inventor an exclusive, limited time right to commercially exploit the invention.  *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-81 (1974).

The Court then considers Animal Care's argument that Hydropac's unjust enrichment claim is preempted by CUTSA.   CUTSA provides a scheme for addressing claims of misappropriation of "trade secrets," which the act defines as "any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7-74-102(4).   An essential character of a "trade secret" is that the owner "must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." *Id.* CUTSA expressly provides that it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." C.R.S. § 7-74-108.

The question of whether CUTSA applies to preempt a common-law claim of unjust enrichment is determined by inquiring as to whether the alleged enrichment is, in essence, one which turns on the misappropriation of information that CUTSA defines as a "trade secret." *See e.g. Powell Products, Inc. v. Marks*, 948 F.Supp. 1469, 1474-75 (D.Colo. 1996) ("To the extent that plaintiff's claim seeks recovery for defendants' misappropriation of plaintiff's intellectual property, it is seeking to recover for misappropriation of trade secrets").  If a plaintiff alleges that the defendant was unjustly enriched by its misappropriation of business data that, although valuable, does not meet the statutory definition of "trade secret," unjust enrichment provides the proper remedy.  *See L-3 Communications Corp. v. Jaxon Engineering & Maintenance*, 863 F.Supp.2d 1066, 1087 (D.Colo. 2012) (distinguishing *Powell* and finding no pre-emption where "Defendants were unjustly enriched by events that do not involve any trade secrets") (emphasis added).  Thus, the question becomes whether  the misappropriated

information identified in Hydropac's Amended Complaint constitutes a "trade secret" under CUTSA.

Hydropac's Amended Complaint unambiguously speaks in the language of CUTSA's "trade secret" definition.  Paragraph 131 and 137 emphasize that Hydropac "bound [Mr. O'Connor] to maintain the confidentiality" of that material, and Paragraph 132 indicates that Hydropac required the same of all other employees who were entrusted with the material. Paragraph 135 alleges that the information has a business value that gives a competitive advantage to Hydropac, and Paragraph 136 contends that the information is not readily-available in the public domain.  Taken together, it is clear that Hydropac is alleging that the "confidential material" that Animal Care is alleged to have misappropriated is that which would meet the statutory definition of a "trade secret" under CUTSA.  Thus, under *Powell*, CUTSA preempts Hydropac's unjust enrichment claim.

Nevertheless, the Court sees little utility in "dismissing" the claim.  As the foregoing discussion establishes, Hydropac's allegations adequately state a cognizable claim under CUTSA. Hydropac has adequately alleged that the information misappropriated by Animal Care is a "trade secret" under the statutory definition, and that Animal Care "misappropriated" that trade secret information knowing that Mr. O'Connor was not free to disclose it, C.R.S. § 7-74-102(1), (2)(b)(III)(B).   Thus, rather than further exacerbate the cost of this litigation to the parties with unnecessary motion practice, the Court will simply deem Hydropac's "unjust enrichment" claim to be a claim for misappropriation of trade secrets under CUTSA.

The Court then turns to Animal Care's motion to dismiss Hydropac's "claims" of indirect patent infringement.  The Court notes that Hydropac's claims of patent infringement are general in nature, asserting that Animal Care "directly or through the actions of its employees . . . has

infringed and continues to infringe one or more claims of [each] patent, directly, indirectly, jointly, literally, and/or by equivalents. . . ."  Animal Care's motion attacks only the portions of these claims that allege indirect infringement.

Indirect infringement arises when a patent is infringed, but the defendant is not directly involved with the ultimate infringing conduct.  Statutorily, indirect infringement comes in two varieties: (i) "induced infringement," in which the defendant "advises, encourages, or otherwise induces others to engage in" the ultimate infringing conduct, 35 U.S.C. § 271(b), *Akami Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307-08 (Fed. Cir. 2012); and (ii) "contributory infringement," in which a defendant manufactures or sells a product, knowing that the product is a material part of a greater patented invention, aware that others may use the product to complete the assembly of the patented invention, 35 U.S.C § 271(c), *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct 2060, 2065-68 (2011).  Both forms of indirect infringement differ from direct infringement (where the defendant is the party engaging in the ultimate act of infringement) insofar as indirect infringement requires proof of the defendant's knowledge and intent to bring about the infringement, whereas direct infringement is a strict-liability offense and the defendant's knowledge and intent are irrelevant.  *Global-Tech*, 131 S.Ct. at 2059 n. 2, 2068.

Animal Care initially alleged that Hydropac's allegations of indirect infringement are subject to dismissal because: (i) Hydropac fails to plead facts indicating Animal Care's knowledge of the patents at issue; (ii) Hydropac fails to plead facts indicating Animal Care's intent to induce others to infringe upon the patents; and (iii) Hydropac fails to allege facts supporting a conclusion that Animal Care contributed to others' infringement.   During the briefing of this motion, Hydropac amended its Complaint in an attempt to cure many of the

defects cited by Animal Care, and Animal Care concedes that some of its arguments were mooted by that amendment.  Nevertheless, in its reply brief,[5] it insists that Hydropac's Amended Complaint still fails to adequately allege: (i) Animal Care's intention to induce others to infringe Hydropac's patents and (ii) that Animal Care's products have substantial non-infringing uses (such that they cannot give rise to contributory infringement).

The Court need not delve into these contentions in great depth.  The Amended Complaint adequately alleges facts that, taken in the light most favorable to Hydropac, suggest that Animal Care knew (and intended)  that its customers would use Animal Care's products to infringe on Hydropac's patents.  Hydropac points to evidence that Animal Care specifically touted  its products as being compatible with Hydopac's systems.  This permits the conclusion that Animal Care induced its customers to purchase Animal Care products, as compared to Hydropac products, to complete the Hydropac-patented system.  This is sufficient to constitute induced infringement.  Moreover, the Amended Complaint adequately alleges that Animal Care's products have no substantial non-infringing uses.  Hydropac alleges that "there is only one practicable way to use such products in the laboratory animal care industry, and those methods infringe" Hydropac's patents.  Animal Care argues that this statement is "implausible," but at this juncture, the Court treats the factual averment – "there is only one practicable way to use such products in the laboratory animal care industry" – as true.  Whether Hydropac can ultimately prove the truth of that allegation is a matter that must await further proceedings.

---

[5]      The Court finds fault with both parties in this regard.  Although not strictly applicable to dispositive motions, the spirit of the conferral requirements of D.C. Colo. L. Civ. R. 7.1, if observed here, would have resulted in Hydropac amending its Complaint before any motion was filed.  Although Animal Care maintains that even the Amended Complaint is deficient, a motion to dismiss that was directed in the first instance at the Amended Complaint, rather than the original Complaint, would have provided the Court with more meaningful briefing of the issues that remain.

Accordingly,  Hyrdopac's Motion to Consolidate Cases and Align Parties (**# 15** in 13-cv-143 and **# 15** in 13-cv-415) is **GRANTED IN PART**, insofar as the Court **CONSOLIDATES** Case No. 13-cv-415 into Case No. 13-cv-143, and directs that all further filings take place in Case No. 13-cv-143 with the caption denoted above, and **DENIED IN PART** in all other respects.  Animal Care's Motion to Dismiss (**# 23** in 13-cv-143 and **# 19** in 13-cv-415) is **DENIED**, subject to the Court deeming Hydropac's unjust enrichment claim to be a claim asserted under CUTSA.

Dated this 10th day of January, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge