**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-00143-MSK-NYW

ANIMAL CARE SYSTEMS, INC.,

        Plaintiff,

v.

HYDROPAC/LAB PRODUCTS, INC.,

        Defendant/Third-Party Plaintiff,

v.

MICHAEL O'CONNOR,

        Third-Party Defendant.

-----
and
-----


Civil Action No. 1:13-cv-00415-MSK-NYW

HYDROPAC/LAB PRODUCTS, INC.,

        Plaintiff,

v.

ANIMAL CARE SYSTEMS, INC.,

        Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

        This matter is before the court on the following pending motions, which have been fully

briefed by the Parties: (1) Plaintiff Animal Care Systems, Inc.'s Motion to Dismiss Defendant

Hyrdopac/Lab Products, Inc.'s Counterclaims for Failure to State a Claim ("Animal Care's Motion to Dismiss State Law Claims") [#83]; (2) Hydropac/Lab Products, Inc.'s Motion to Dismiss Counts IX an X of Animal Care Systems, Inc.'s Second Amended Counterclaims, or Alternatively, for Summary Judgment of No Joint Inventorship ("LPI's Motion for Partial Dismissal, or In Alternative Summary Judgment, on Inventorship") [#95]; and (3) Counterclaim Defendant Michael O'Connor's Motion to Dismiss Defendant Hydropac/Lab Product Inc.'s Counterclaims for Lack of Jurisdiction and Failure to State a Claim ("O'Connor's Motion to Dismiss") [#101].

I have reviewed the respective Motions, Responses, and Replies and respectfully RECOMMEND that:

(1) Animal Care's Motion to Dismiss State Law Claims be GRANTED in part, and DENIED in part;

(2) LPI's Motion for Partial Dismissal, or in Alternative, for Summary Judgment be DENIED; and

(3) Mr. O'Connor's Motion to Dismiss be GRANTED in part, and DENIED in part.

## BACKGROUND

Because it is relevant to the consideration of the pending Motions, I will recount the procedural history of pleadings, and the resulting motions, in this case. On November 20, 2012, Defendant Hyrdopac/Lab Products Inc. ("LPI") sued Plaintiff Animal Care Systems, Inc. ("Animal Care") for infringing five patents -- United States Patent Nos. 6,983,721 ("'721 Patent"); 7,866,280 ("'280 Patent"); 8,291,865 Patent ("'865 Patent"); 6,941,893 ("'893 Patent"); and 6,986,324 ("'324 Patent") in the United States District Court for the District of Delaware ("Delaware action"). Animal Care then filed the original declaratory judgment

Complaint in this court on January 22, 2013, seeking a declaration of non-infringement and/or invalidity of the same five patents asserted against it in the Delaware action. A month later, Animal Care and LPI stipulated, and the Delaware court ordered, that the Delaware action be transferred to this court, where it was docketed as Civil Action No. 13-cv-415-MSK-BNB. LPI then filed a Motion to Consolidate Cases and Align Parties ("Motion to Consolidate") [#15].

While the Motion to Consolidate was pending, LPI filed its Answer to Animal Care's original declaratory judgment Complaint, and asserted counterclaims of patent infringement and unjust enrichment on April 18, 2013 [#22].[1] Animal Care responded by filing a Partial Motion to Dismiss Counterclaims, seeking dismissal of LPI's counterclaims of indirect patent infringement and unjust enrichment on May 13, 2013 [#23]. That same day, Animal Care filed its Reply to LPI's Counterclaims and asserted affirmative defenses of non-infringement, invalidity, estoppel/laches/waiver, and limitations of remedies [#24].

In the face of Animal Care's Partial Motion to Dismiss Counterclaims, LPI filed an Answer and Amended Counterclaims on June 3, 2013 ("LPI's First Amended Counterclaims") [#27]. LPI also filed an Opposition to Animal Care's Partial Motion to Dismiss on June 6, 2013 [#28]. Animal Care then filed an Answer to LPI's First Amended Counterclaims [#29], and also filed a Reply to its Motion to Dismiss Counterclaims [#30].

With the Motion to Consolidate and Animal Care's Partial Motion to Dismiss Counterclaims pending, LPI moved for leave to amend its Counterclaims for a second time and join Mr. O'Connor as a Counterclaim Defendant ("Motion for Leave to File Second Amended Counterclaims") [#48] on November 27, 2013. As an exhibit to the motion, LPI attached a

---

[1] Because the cases were not yet consolidated, the Parties continued to file essentially the same papers in Civil Action No. 13-cv-415-MSK-BNB. The docket entries in this Recommendation, denoted as [#__], refer to this Civil Action No. 13-cv-143-MSK-NYW.

3

proposed Answer and Second Amended Counterclaims [#48-1].  In its proposed Second Amended Counterclaims, LPI withdrew its count of infringement of the '324 Patent, thereby leaving allegations relating to the '721 Patent, '280 Patent, '865 Patent, and '893 Patent (collectively, "Patents-in-Suit"); added a counterclaim of breach of contract against Mr. O'Connor personally; added a counterclaims of misappropriation of business value against Mr. O'Connor and Animal Care, and added a counterclaim of tortious interference with contractual relations against Animal Care [*id.*].  LPI's counterclaim for unjust enrichment was renumbered, but substantively remained the same.  [#48-7, at ¶¶ 110-131].

By Order dated January 10, 2014 ("January 10 Order"), the court, *inter alia*, consolidated the two cases under this case number, but declined to realign the parties.  [#55].  In addition, the court converted LPI's counterclaim for unjust enrichment to one for trade secret misappropriation, finding that LPI's "has adequately state[d] a cognizable claim under CUTSA [Colorado Uniform Trade Secret Act]."  [#55, at 10].  On March 31, 2014, the court granted LPI's Motion for Leave to File Second Amended Counterclaims, and LPI's proposed Answer and Second Amended Counterclaims was deemed filed, without any further action by the Parties. [#68].  Animal Care subsequently filed its Answer to LPI's Second Amended Counterclaims, asserting its own counterclaims to LPI's Second Amended Counterclaims, including claims for a declaration of non-infringement and/or invalidity of the Patents-in-Suit and new claims for correction of inventorship for the '721 Patent and the '280 Patent.  [#85].  Mr. O'Connor has not answered LPI's Second Amended Counterclaims.

LPI's Second Amended Counterclaims [#75] and Animal Care's Counterclaims[2] in response [#85], give rise to the three pending Motions.

## ANALYSIS

### I.     Animal Care's Motion to Dismiss LPI's State Law Counterclaims

First, Animal Care seeks dismissal of LPI's state law counterclaims of unjust enrichment [# 75, Counterclaim – Count V]; tortious interference of business relations [*id.*, Counterclaim – Count VIII]; misappropriation of business value [*id.*, Counterclaim – Count VII]; and the judicially-converted count of misappropriation of trade secrets. [#83].

### A.  Standard of Review

Under Rule 8(a) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007)).  While allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient, *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012), the statement need only give fair notice of what the claim is and the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

---

[2] Animal Care's Counterclaims IX and X for correction of inventorship of the '721 and '280 Patents are more properly understood as additional counts for declaratory relief.  However, I refer to them as counterclaims in this Recommendation to align with how Animal Care refers to them in its papers.

### B.  Unjust Enrichment

Animal Care argues that LPI's unjust enrichment counterclaim must be dismissed with prejudice because the court already found that it is preempted by CUTSA.  [#83, at 6-9; #99, at 2-3].  LPI responds that its count of unjust enrichment was converted by the court to a claim for misappropriation under CUTSA, and the count was "simply not renamed in its Second Amended Complaint [sic]."  [#94, at 3].

Given the respective positions of Animal Care and LPI, it is undisputed that the count of unjust enrichment is no longer in this case.  But in Reply, Animal Care would have this court formally dismiss LPI's unjust enrichment claim with prejudice, "because LPI has amended its counterclaim to include what it already knew was a preempted unjust enrichment count."  [#99, at 2].  I disagree.  As discussed above, the chronology of this case shows that LPI filed its Motion for Leave to File Second Amended Counterclaims and tendered the proposed Second Amended Counterclaims on November 23, 2013, prior to the court's order conversion of the unjust enrichment counterclaim to one for trade secret misappropriation by Order dated January 10, 2014.  Animal Care cites no authority to justify dismissal with prejudice.  Thus, I decline to reinterpret the court's January 10 Order as a dismissal with prejudice of LPI's unjust enrichment claim.

### C.  Tortious Interference

In its tortious interference counterclaim, LPI alleges that Animal Care tortiously interfered with LPI's contractual relationship with Mr. O'Connor, causing Mr. O'Connor to breach his confidentiality obligations set forth in his agreement with LPI ("O'Connor Agreement) and unlawfully disclose LPI's Confidential Material to Animal Care.  [#75, ¶¶ 153-163].  Animal Care urges this court to find that LPI tortious interference claim is preempted for

two reasons:  (1) by statutory definition because it is based on a breach of a confidentiality agreement, and (2) because it is based on the same facts as its trade secret misappropriation case. [#83, at 9-13].  LPI counters that its claim of tortious interference with contractual relations is distinct from a CUTSA claim because tortious interference with contractual relations involves entirely separate elements from a CUTSA claim, and its adjudication is not contingent on whether the misappropriated information qualify as trade secrets.  [#94, at 5, 7].

This court rejects blanket preemption to all state law tort claims that arise from a set of circumstances that happen to involve purported trade secret misappropriation.  *See Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996).  Instead, the court recognizes that the preemptive reach of the CUTSA is necessarily narrow.  *See L-3 Communications Corp. v. Jaxon*, 863 F. Supp. 2d 1066, 1087 (D. Colo. 2012).  Preemption is only appropriate where "other claims are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation."  *Powell Prods.*, 948 F. Supp. at 1474.

Animal Care's attempt to extend CUTSA preemption to include any tortious interference claim based on the breach of a confidentiality agreement due to the statutory language, *i.e.*, "CUTSA brings any attempted allegations of tortious interference with a confidentiality agreement within the scope of a claim for misappropriation," [#83, at 10], without regard to the underlying facts asserted, goes too far.[3]   But LPI's contention that preemption is precluded simply because the two claims legally require different proof [#94, at 5-7] is also incorrect. Employing the appropriate fact-driven approach set out in *Powell*, preemption is appropriate in

---

[3] For instance, if parties entered an agreement not to disclose an individual's private health information and a third party induced a party to breach that agreement, the resulting claim would not necessarily be related to a trade secret and preempted by CUTSA.

this case because the underlying facts supporting LPI's claim for tortious interference are merely a restatement of the factual proof alleged to support its trade secret misappropriation claim. *See Allied Erecting & Dismantling Co., Inc. v. Genesis Equipm't & Manuf.*, 649 F. Supp. 2d 702, 722-23 (N.D. Ohio 2009).

LPI specifies no independent facts that support its claim for tortious interference. Indeed, both claims for trade secret misappropriation and tortious interference rely upon Confidential Material related to the "design, development, marketing, sale and/or offer for sale of animal housing and watering systems and valve design, configuration, and implementation." [#75, ¶¶ 116, 158.] The specific example of misconduct for both claims is "Animal Care unlawfully used LPI's Confidential Material to develop suppliers, training techniques, and sales information in connection with and to develop its OptiQUENCH® water delivery system and companion products, which use certain non-public information regarding LPI's suppliers, training techniques, and sales information, to unfairly compete with LPI." [*Id.* at ¶¶ 123, 160]. LPI's conclusory argument that "LPI's claim for interference with contractual relations does not depend on the determination that the misappropriated information qualify as trade secrets" [#94, at 6] is insufficient to overcome LPI's use of substantially similar facts to support both. Indeed, LPI is not disclaiming a cause of action for trade secret misappropriation – to the contrary, it argues that the unjust enrichment claim converted by the court to one for trade secret misappropriation should stand. [#94, at 4]. Accordingly, I recommend that LPI's claim for tortious interference of contractual relations be dismissed.

### D. Misappropriation of Trade Secrets

Animal Care also seeks dismissal of LPI's judicially converted claim for trade secret misappropriation, arguing that: (1) LPI's statements in its Reply in support of its Motion for

Leave to File Second Amended Counterclaims constitute judicial admissions that warrant the dismissal of the judicially converted claim for trade secret misappropriation [#83, at 17-18; #99, at 10-11]; and (2) LPI fails to plead its trade secret claim with sufficient particularity [#83, at 19-21; #99, at 13-15].  LPI counters by arguing that the court has already determined that the count for trade secret misappropriation has been adequately pled, and that determination is law of the case and should not be disturbed.  [#94, at 3-4].  LPI does not address Animal Care's complaints that its factual averments are insufficient to state a claim for trade secret misappropriation.  [*Id.*]

The law of the case doctrine bars the reopening of a question already decided in an earlier stage of the same litigation, except in narrow and exceptional circumstances.  *In re Antrobus*, 563 F.3d 1092, 1098 (10th Cir. 2009).  Three types of circumstances are recognized:  (1) a party produces substantially different evidence than what was available at the time of the original decision; (2) the decision was clearly erroneous and would work a manifest injustice; or (3) subsequent controlling authority exists.  *See Wessel v. City of Albuquerque*, 463 F.3d 1138, 1143-44 (10th Cir. 2006) (citation omitted).  These exceptions are read narrowly, requiring district courts to apply the law of the case unless one of the exceptions specifically and unquestionably applies.  *United States v. Monsisvais*, 946 F.2d 114, 117 (10th Cir. 1991).

In its January 10 Order, the court determined that LPI had adequately stated a cognizable claim under CUTSA.  [#55, at 10].  That determination is law of the case, unless one of the three narrow exceptions applies.  Animal Care argues that LPI's statement in its Reply to its Motion for Leave to File Second Amended Counterclaims that "this is not a trade secret misappropriation case … nor does LPI allege that such information is a trade secret" amounts to substantially different evidence in the form of a judicial admission.  [#83, at 17].  I disagree. Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a

judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute. *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n. 4 (10th Cir. 2005). At the time that LPI made such statements (the day prior to the Court's conversion of the claim for unjust enrichment to one for trade secret misappropriation), it did not have a claim for trade secret misappropriation in the case. And LPI made its statement with respect to not only its claim for unjust enrichment, but also for breach of contract, tortious interference of contractual relations, and misappropriation of business value. [#54, at 6]. Therefore, I conclude that LPI's statement should not be interpreted to mean that under any circumstances, it had no trade secrets upon which it could assert a claim for trade secret misappropriation, but rather, that as of January 9, 2014, it was not asserting that its claims for unjust enrichment, breach of contract, tortious interference of contractual relations, and misappropriation of business value relied upon a legally cognizable trade secret. Indeed, Animal Care would have this court dismiss LPI's trade secret misappropriation claim for failure to state a claim, but also dismiss its state law tort claims as preempted by CUTSA because LPI has factually alleged a trade secret claim. Such an outcome would be incongruous.

Animal Care further argues that LPI has failed to plead its trade secret misappropriation claim with sufficient particularity. This court agrees that LPI must explain, with sufficient particularity, the information allegedly misappropriated that constitutes a cognizable trade secret; otherwise, Animal Care cannot adequately prepare its defense. *Int'l. Academy of Bus. And Fin. Mgm't., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013) (citing *Saturn Sys, Inc. v. Militare*, 252 P.2d 516, 522 (Colo. App. 2011). But given the court's prior ruling, the litigiousness over the initial pleadings in this matter, and the fact that discovery has yet to open, I find that dismissal, at this juncture, is not warranted and would not

10

serve judicial efficiency. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint.*, 863 F. Supp. 2d 1066, 1080-81 (D. Colo. 2012).   Animal Care can inquire through discovery about the particular factual underpinnings of LPI's trade secret misappropriation case, and LPI will be required to identify its purported trade secrets, and the circumstances of the misappropriation, with specificity beyond what it has pled in its Second Amended Counterclaim.

## II.   LPI's Motion for Partial Dismissal, or in Alternative, Summary Judgment on Claims for Correction of Inventorship

Next, LPI seeks dismissal for failure to state a claim, or in alternative, summary judgment, of Animal Care's claims for correction of inventorship relating to the '721 and '280 Patents, arguing that Animal Care has failed to allege sufficient facts in its Counterclaims IX and X to establish: (1) a "non-insignificant contribution" by the alleged third-party inventor, Robert Kelly, and (2) collaboration with the named inventors to arrive at a claimed invention.  [#95, at 3-4].  LPI further argues that the averments are "vague, inaccurate, and incomplete."  [#96, at 12-17].  In alternative, Animal Care urges the court to find as a matter of law, that Mr. Kelly is not an inventor on either the '721 or '280 Patent, and enter summary judgment in its favor.  [*Id.* at 18-27].  Animal Care opposes LPI's efforts to dismiss Counterclaims IX and X or for summary judgment on those counts, arguing that neither dismissal nor summary judgment is appropriate because it has properly stated a claim for joint inventorship, and there are genuine issues of material fact.  [#103].

### A.  Standard of Review

As discussed above, the court draws all reasonable factual inferences in favor of the non-moving party when considering whether a party has enough facts to state a claim to relief that is plausible on its face.  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (*citing Twombly*, 550 U.S. at 544 (2007)). The court may also consider documents referred

to in the pleadings if those documents are attached, and there is no dispute as to their authenticity. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007). Beyond that, the court may also convert a motion to dismiss to one for summary judgment when a party submits material beyond the pleadings, so long as the court provides the parties with notice so that all factual allegations may be met with countervailing evidence. *See* Fed. R. Civ. P. 12(d); *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005). The conversion process, however, is not automatic. Rather, the decision whether to convert a motion to dismiss to one for summary judgment is reserved to the court's discretion. *See Humood v. City of Aurora*, No. 12-cv-02185-RM-CBS, 2014 WL 4345410, at *5 (D. Colo. Aug. 28, 2014) (J. Moore).

Summary judgment is proper only when there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the court considers whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**B. Joint Inventorship**

Section 116 of the Patent Act provides that:

When an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

35 U.S.C. § 116(a).

A patent may be invalid for failure to name a joint inventor.  35 U.S.C. § 102(f).[4] However, a party may "save" a patent with incorrect inventors from invalidity by correcting the inventors.  Correction of inventorship is brought before a court pursuant to § 256 of the Patent Act.  *Id.* at § 256; *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n. 1 (Fed. Cir. 2004).   In such a proceeding, while the named inventors are presumed to be correct, a court has jurisdiction to consider the issue and order the correction of inventorship of a patent on notice and hearing of all parties concerned.  *Id.* at § 256(b); *Eli Lilly*, 376 F.3d at 1359.  Inventorship is a mixed question of law and fact, with the overall determination a question of law based on underlying determinations of fact.  *Eli Lilly*, 376 F.3d at 1362 (citing *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1304 (Fed. Cir. 2003)).

The inquiry on joint inventorship focuses on conception of the invention and joint behavior.  *See Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010). Conception is defined as the formation in the mind of the inventor if a definite and permanent idea of the complete and operative invention, as it is to be applied in practice. *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). The interplay between conception and collaboration requires that each co-inventor engage with other co-inventors to contribute to a joint conception.  *Vanderbilt*, 601 F.3d

---

[4] Congress reformed the Patent Act with the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), as amended by the Leahy-Smith America Invents Technical Corrections, Pub. L. No. 112-274, 126 Stat. 2456 (2013) ("AIA").  The pre-AIA § 102 remains in effect for the '721 and '280 Patents because they were filed prior to March 16, 2013. However, in other instances, the court applies post-AIA provisions, such as § 116, which applies to proceedings instituted after September 16, 2012.  The Delaware action was instituted on November 20, 2012.  *See* [#1-1, at 15].

at 1303. Yet each inventor need not contribute to every part of an invention. Rather, "the qualitative contribution of each collaborator is the key – each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice." *Id.* (citing *Burroughs*, 40 F.3d at 1229.) Therefore, to state a cognizable claim for correction of inventorship, Animal Care must allege specific facts that (1) Mr. Kelly contributed to the "formation in the mind of the inventor of a definite and permanent idea" of the subject matter of at least one asserted claim of each of the '721 and '280 Patents; and (2) Mr. Kelly engaged with other co-inventors to contribute to a joint invention. *See Burroughs*, 40 F.3d at 1227-28 (defining "conception").

In its Answer to LPI's Second Amended Counterclaims, Animal Care alleges the following facts, *inter alia*, related to its claims for correction of inventorship:

1. The named inventors of the '721 and '280 Patents contacted Mr. Kelly about potentially collaborating on a project to develop a watering system for laboratory animals using sealed bags of water [#85, at ¶ 21];

2. In or about December of 2001, Mr. Kelly met with several LPI employees, including the named inventors of the '280 and '721 Patents, and discussed, among other things, several design criteria and potential solutions for forming, filling, and sealing plastic bags of water in the laboratory environment [*id.* at ¶ 22];

3. On March 12, 2002, named inventor Chinsoo Park emailed Mr. Kelly with a proposed design specification for a water-bagging machine that was based on the collaboration between the named inventors and Mr. Kelly during the December 2001 meeting at General Packaging [*id.* at ¶ 23];

14

4. Mr. Kelly met with the named inventors of the '721 and '280 Patents at least once more in March and/or April of 2002 to further refine their joint conception of a water-bagging machine that would be suitable for the laboratory environment and to further refine their joint invention [*id.* at ¶ 25];

5. On or about April 22, 2002, Mr. Kelly's company, General Packaging, and Lab Products entered into a Development and Supply Agreement for the development and supply of a water-bagging machine according [sic] the design specification that was jointly developed by Mr. Kelly and the named inventors of the '721 and '280 Patents [*id.* at ¶ 26];

6. Mr. Kelly diligently designed, developed, and reduced to practice a water-bagging machine for use in the environment [*id.* at ¶ 28];

7. The '721 Patent claims many of the inventive concepts that were jointly conceived of and independently reduced to practice by Mr. Kelly.  For example, independent claim 36 of the '721 Patent includes Mr. Kelly's invention of a bag forming apparatus that is specially adapted for use in the laboratory environment [*id.* at ¶ 32]; and

8. The '280 Patent claims many of the inventive concepts that were jointly conceived of and independently reduced to practice by Mr. Kelly.  For example, independent claim 17 of the '280 Patent includes Mr. Kelly's invention of a bag filling apparatus that is specially adapted for use in the laboratory environment [*id.* at ¶ 33].

Although not entirely clear, Animal Care appears to allege that Mr. Kelly, along with the named inventors, conceived of the idea of using a water-bagging machine to provide the

watering system for laboratory animals using sealed bags of water as part of the overall systems and methods claimed in the '721 and '280 Patents.  [#85, ¶¶ 21-22, 32, 33].  LPI vigorously argues that "Mr. Kelly does not claim to have invented the idea of placing a bag forming machine on the clean side of a laboratory for watering animals housed in cage level barrier-type cases, and in fact has not come forward with any documents or evidence that shows he had any experience with animal laboratories prior to dealing with LPI or with the problems solved by the claimed inventions."  [#106, at 7].  Animal Care does allege that Mr. Kelly contributed to the idea of using a water-bagging machine with certain design specifications to the invention.  [#85, at ¶¶ 22-23].  Animal Care also alleges specific facts regarding meetings between Mr. Kelly and the named inventors, to demonstrate collaboration.  [*Id.* at ¶¶ 22-23, 25].

"The line between actual contributions to conception, and the remaining, more prosaic contributions to the inventive process that do not render the contributor a co-inventor is sometimes a difficult one to draw." *Eli Lilly*, 376 F.3d at 1359.  To be certain, LPI raises important questions of fact that will need to be resolved in adjudicating the issues of inventorship.  Nevertheless, drawing all factual conclusions in favor of Animal Care, I do not conclude that its Counterclaims IX and X are so bereft of factual allegations to warrant dismissal at this stage.[5]

LPI next seeks to convert its motion to dismiss to one for summary judgment, urging the court to find as a matter of law that Mr. Kelly is not a co-inventor of either the '721 Patent or

---

[5] On February 9, 2015, the court issued its Opinion and Order Construing Claims [#123].  In that Order, the court determined that the term "designed and configured" as it appears in independent claim 36 of the '721 Patent is indefinite.  [*Id.* at 20-22].  Accordingly, claim 36 of the '721 Patent (and claims 37-46 that depend from it) are all invalid and cannot be asserted against Animal Care.  To the extent that Animal Care only alleges that Mr. Kelly is a joint inventor of independent claim 36 or its dependent claims, or that LPI only asserts independent claim 36 or its dependent claims against Animal Care, Animal Care's Counterclaim IX (for correction of inventorship of the '721 Patent) may be subject to dismissal.

'280 Patent.  [#96, at 5-12, 18-28; #106].  Animal Care opposes such a conversion, arguing that consideration of summary judgment is premature.  [#103, at 28-20].  I agree.

As the Parties recognize, "inventorship is determined on a claim-by-claim basis, and involves a comparison of the alleged contributions of each asserted co-inventor with the subject matter of the correctly construed claim to determine whether the correct inventors were named." *See Gemstar TV Guide Int'l, Inc. v. Int'l Trade Comm'n,* 383 F.3d 1352, 1381-82 (Fed. Cir. 2004).  While the court has now construed the disputed claims, it is far from clear what claims and defenses thereto (patent or otherwise) will eventually be asserted in this matter.[6]  Indeed, the operative counts in the respective pleadings are just now being determined, and the Scheduling Order in this case contemplates deadlines for final infringement and invalidity contentions to be set in the future.  [# 40, at 8, 11-12].  In addition, discovery has yet to commence in this matter [*id.* at 8], and facts related to the conception and reduction to practice of these patents are likely to be explored in conjunction with defenses not affected by LPI's Motion for Partial Dismissal. And the mere volume of additional material submitted by both LPI and Animal Care (without considering the substance of such material) suggests that there may be significant facts that may be disputed and are yet fully developed at this stage.  Under the particular circumstances presented by this case, I decline to convert LPI's Motion for Partial Dismissal into one for summary judgment and exclude consideration of the outside exhibits submitted by both parties. *See Humood*, 2014 WL 4345410, at *5.

### III.    Mr. O'Connor's Motion to Dismiss

Finally, Mr. O'Connor seeks dismissal of the claims asserted against him personally, *i.e.*,

---

[6] On February 23, 2015, the Parties filed a Joint Status Report in which the Parties acknowledged that "there was sharp disagreement as to how this case should proceed."  [#125].  The court addresses the scheduling issues presented therein with the Minute Order issued concurrently with this Recommendation.

breach of contract and misappropriation of business value.  [#101].  He first argues that the court lacks subject matter jurisdiction over the breach of contract claim [#101, at 6-8].  He further contends that the court lacks personal jurisdiction over him, because he is a resident of North Carolina and has insufficient contacts with Colorado to bring him within the reach of Colorado's long-arm statute.   [#101, at 9-14].   Mr. O'Connor also argues that (1) LPI's claim of misappropriation of business value against him is preempted by CUTSA and should not be converted to one for trade secret misappropriation [*id.* at 14-18]; and (2) various claims asserted against him are barred under the statute of limitations [*id.* at 22-30].

### A.  Dismissal Pursuant to Rule 12(b)(1)

Mr. O'Connor seeks dismissal of the breach of contract claim against him pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this court lacks subject matter jurisdiction over it because a prior Consent Order vested exclusive jurisdiction in New Jersey Superior Court over any alleged breaches of confidentiality.  [#101, at 6-8].  This argument is premised on the belief that LPI's arguments are based on a breach of the Consent Order, and the language of the Consent Order, which states "This Consent Order shall constitute a stipulated final judgment in this civil action. The Court shall retain jurisdiction over this matter to enforce its terms." [*Id.* at 7].  LPI also argues, for the first time in Reply, that the Consent Order extinguished the O'Connor Agreement. [#110, at 6-8]. This court will consider Mr. O'Connor's "accord" argument first.[7]

The critical question in determining whether a later accord satisfies the obligations of a prior agreement is whether there is sufficient evidence to show intent by both parties to accept

---

[7] While Mr. O'Connor suggests that LPI "attempts to mischaracterize Mr. O'Connor's arguments in his motion to dismiss" [#107, at 2] this court could not find any reference to Mr. O'Connor's "accord" argument in his Motion to Dismiss.  [#101, at 6-8].  As a result, this argument is arguably not properly before the court because it was first raised in Reply.  Nevertheless, the court will consider it at this juncture, to prevent an unnecessary dispute between the Parties.

the accord agreement as a discharge of the first. *Caldwell v. Armstrong*, 642 P.2d 47, 49 (Colo. App. 1981). A reading of the Consent Order does not support Mr. O'Connor's argument. The Consent Order makes no express mention of superseding the O'Connor Agreement. [#102-4]. Instead, the Consent Order makes reference to continuing obligations by Mr. O'Connor under Paragraph 1 and 2 of the O'Connor Agreement. [*Id.* at ¶ 5(a)]. There is also no evidence before the court that LPI agreed to substituting the original O'Connor Agreement with the Consent Order – LPI's allegations certainly do not support such a theory. Therefore, the court does not agree that the Consent Order extinguished the O'Connor Agreement and any breach of confidentiality necessarily arises under the Consent Order.

Mr. O'Connor's other arguments related to subject matter jurisdiction are equally unavailing. LPI unequivocally stated that LPI's breach of contract claim did not arise from an alleged breach of the Consent Order, but from a new breach of the underlying O'Connor Agreement:

> [M]y understanting is that you have two separate causes of action, one for breach of contract and one for the judgment and you could bring either. … If we want to enforce the judgment we can go back to New Jersey, but if we want to enforce the contract we're – we're here or New Jersey or anywhere else that we could find them because the truth is that's – that's what the real issue is.

[#90, 7:21-8:7; #107, at 3-4]. And as LPI points out in its briefing, the court specifically held that "I don't believe that the claim here is to enforce the consent judgment. The claim here is for a new breach of the underlying contract." [#107, at 2-3, citing [#90, 28:3-6]]. LPI will be limited in its count for breach of contract to allegations related to the breach of the underlying O'Connor Agreement, which may or may not be ultimately viable as a matter of law or fact.[8]

---

[8] The court recognizes that LPI's allegations include references to Mr. O'Connor violating the Consent Order. *See e.g.*, [#75, ¶¶ 121, 126]. Given its positions in this case, LPI will be precluded from pursuing any claim of violation of the Consent Order in this action.

Accordingly, I find that this court has subject matter jurisdiction over LPI's Counterclaim against Mr. O'Connor for breach of the underlying O'Connor Agreement.

### B.  Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)

Mr. O'Connor also seeks dismissal from the action, arguing that the court lacks personal jurisdiction over him.  [# 101, at 8-14].  LPI bears the burden to establish, by a preponderance of the evidence, that this court has personal jurisdiction over Mr. O'Connor.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  It may do so at this phase by making a *prima facie* showing.  *Id.*  Given the procedural posture of this case, the court will consider the pleadings and affidavits of Mr. O'Connor and LPI.  All well-pled facts in LPI's Counterclaims against Mr. O'Connor are taken as true, and any factual disputes are resolved in LPI's favor.  *Id.*

In this case because there is no applicable statute that provides for nationwide service of process, the test for personal jurisdiction turns on the application of Colorado's long-arm statute, which confers the maximum jurisdiction permissible consistent with the Due Process Clause.  *Id.* at 1070.  Thus, the inquiry effectively focuses on the constitutional analysis of whether Mr. O'Connor has minimum contacts with Colorado, such that having to defend a lawsuit here would not "offend traditional notions of fair play and substantial justice."  *Id.* at 1070 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Mr. O'Connor argues that this court lacks personal jurisdiction over him because LPI did not allege any tort occurred in Colorado.  [#101, at 9].  He also attests that he does not live or work in Colorado, has been in Colorado only five times in six years, and his contacts with Colorado are limited to emails and phone calls to other Animal Care employees .  [#101, at 10; #102, ¶¶ 1-6].  He further contends that even if his contacts were not minimal, it does not

comport with due process for this court to exercise personal jurisdiction over him because of the expense and burden to him, and because Colorado's interest in resolving the dispute is insufficient to warrant jurisdiction.  [*Id.* at 12-13].

LPI counters that Mr. O'Connor purposefully availed himself of Colorado due to his continuing employment with Animal Care, a Colorado-based company.  [# 107, at 7].  LPI further argues that this litigation arises from Mr. O'Connor's contacts with Animal Care, and that Mr. O'Connor should have reasonably foreseen the possibility of litigation in Colorado because he was availing himself of Colorado resources through his employment.  [*Id.* at 8].  LPI also argues that the factors a court considers in determining whether the exercise of jurisdiction is reasonable, such as the burden on the defendant and the forum state's interest in resolving the controversy, all weigh in favor of LPI.[9]  [*Id.* at 10-12].

Whether Mr. O'Connor has the minimum contacts with Colorado to invoke this court's jurisdiction is a closer question than either Animal Care or LPI care to admit.  Unlike the cases it cites, LPI does not plead that Mr. O'Connor's supervisors are located in Colorado, or that he voluntarily submitted himself through a contractual clause to be subject to Colorado's jurisdiction, or that the administrative functions related to his job were performed on his behalf from Colorado – indeed, he can only argue that "discovery will establish" as much.  *Cf. Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1358 (10th Cir. 1990) (citation omitted) *with* [#107, at 6].  Nor does LPI plead that Mr. O'Connor's work efforts are directed at Colorado; to the contrary, Mr. O'Connor declares that he is "the Business Opportunities Coordinator for Animal Care's southeast sales region, which includes the states of North Carolina, South Carolina, Georgia, Florida, and Alabama." [#102, ¶ 3].   But Mr. O'Connor's position that his infrequent *physical*

---

[9] LPI does not argue that this court has general jurisdiction over Mr. O'Connor.  [# 107, at 6-12].  Therefore, the court only addresses personal jurisdiction in the context of specific jurisdiction.

contacts with Colorado exempt him from personal jurisdiction is also untenable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Int'l Beauty Products, LLC v. Beveridge*, 402 F. Supp. 2d 1261, 1276 (D. Colo. 2005). And as discussed above, Animal Care/Mr. O'Connor's insistence that the New Jersey court retained subject matter jurisdiction "over this precise dispute" – is misplaced.

In the end, the balance tips in favor of this court exercising personal jurisdiction over Mr. O'Connor due to the link between the alleged conduct and this forum. Mr. O'Connor's employer is undisputably a Colorado corporation having its principal place of business in Centennial, Colorado. [#85, ¶ 9]. Mr. O'Connor has been an employee of Animal Care since in or about August 2008. [*Id.* at ¶ 11; #102, ¶ 4]. Mr. O'Connor admits that he communicates with Animal Care employees in Colorado via email and telephone. [#102, ¶ 6]. And drawing all inferences in favor of LPI, the behavior that gives rise to this action against Mr. O'Connor, namely disclosure of LPI's confidential information to Animal Care, arguably arose from those communications with Animal Care employees in Colorado, such that Mr. O'Connor could have reasonably foreseen that he would be sued in Colorado if the alleged conduct occurred.

Once minimum contacts have been established, the court turns to evaluating whether the exercise of jurisdiction is reasonable, considering (1) the burden on the defendant; (2) Colorado's interest in resolving the dispute; (3) LPI's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantive social policies. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). While the court is aware that Mr. O'Connor lives in North Carolina and works in the southeast region of the country, I do not find that the burden upon Mr. O'Connor to appear in

this court to be unreasonable.  Mr. O'Connor is a likely witness for LPI's claims for trade secret misappropriation, and willful patent infringement.  *See e.g.,* [#75, 24-26, 48-49].  Mr. O'Connor is still employed by Animal Care [#102, ¶ 3], and is represented by the same counsel [#101, at 29].  Colorado has an interest in resolving this dispute involving one of its own corporations, who affirmatively sought to have this action venued in Colorado rather than Delaware.  Finally, Mr. O'Connor's actions are alleged to be inextricably intertwined with LPI's claim for trade secret misappropriation and willful patent infringement.  Therefore, the interests of both this court and others, as well as for judicial efficiency, are served by this court exercising personal jurisdiction over Mr. O'Connor.

### C.  LPI's Counterclaim for Misappropriation of Business Value

Mr. O'Connor and LPI agree that dismissal of LPI's Counterclaim for Misappropriation of Business Value is appropriate [#107, at 12-13], but LPI requests that the court convert the claim to one for trade secret misappropriation [*id.* at 13].  Mr. O'Connor argues, as Animal Care did, that LPI has not properly alleged a count for misappropriation of trade secrets and has conceded that it has no trade secrets.  [#101, at 18-19].  For the same reasons as discussed above with respect to Animal Care's challenge to the claim for trade secret misappropriation, and in this court's January 10 Order [#55], Mr. O'Connor's arguments are unavailing.  LPI clearly alleges that Mr. O'Connor had access to its confidential, proprietary information, and that he had an obligation to protect it from disclosure.  [#75, ¶ 112].  LPI further avers that Animal Care obtained LPI's proprietary information through Mr. O'Connor.  [#75, ¶ 121].  Therefore, instead of converting LPI's claim for misappropriation of business value, I recommend adding Mr. O'Connor as a defendant to the existing claim for trade secret misappropriation against Animal Care and dismissing the claim for misappropriation of business value.

### D.  Mr. O'Connor's Arguments Related to Statute of Limitations

Mr. O'Connor contends that any claims asserted against him for trade secret misappropriation and breach of contract are barred by the statute of limitations.  [#101, 22-30].  LPI responds by distinguishing the purported trade secrets asserted to be misappropriated in this case (referred to as the "2012 Misappropriated Technical Information"), from the separate quantum of purported trade secrets at the heart of its first litigation against Mr. O'Connor (referred to as the "2008 Misappropriated Sales Information"), and its knowledge of his misappropriation and breach of contract did not accrue until November 2012.  [#107, 15-22].  LPI further argues that even if the statute of limitations has run, it is entitled to equitable tolling.  [#107, at 22-23].  In Reply, Mr. O'Connor complains that LPI's distinctions are not reflected in its pleadings, and are simply arbitrary labels.  [#110, at 12-15].  Mr. O'Connor also contends that LPI is not entitled to equitable tolling.  [*Id.* at 15-16].

A statute of limitation is an affirmative defense that ordinarily is not resolved at the motion to dismiss phase.  Only "when the dates given in the complaint make clear that the right sued upon has been extinguished," is this issue resolvable on a motion to dismiss.  *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 924 (D. Kan. 2007) (*citing Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.1980); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)).  This is not such a case.  The allegations in LPI's Second Amended Counterclaims are not specific enough to resolve what precisely forms the basis or timing of when LPI's claims accrued, and therefore, when the relevant statute of limitations attached.  And clearly, the Parties vigorously dispute the operative facts.  *See City of Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491, 1498 (10th Cir. 1996) (citation omitted) (observing that "in a tort action, however, where the evidence is in dispute as

to when substantial injury first appears or becomes reasonably ascertainable, the issue is for the trier of fact").

To be clear, Mr. O'Connor may well be entitled to judgment on his claims based on statute of limitations grounds. But based on the record before me, I cannot conclude so.[10]  *See Spencer v. City of Wichita*, No. 06-1090-WEB, 2007 WL 2333238, at *3 (D. Kan. Aug. 16, 2007).   Therefore, I recommend that Mr. O'Connor's Motion to Dismiss be denied with respect to statute of limitations.

## CONCLUSION

After careful consideration of the Parties' pleadings, motions, and full briefing in this matter, I respectfully RECOMMEND that:

(1) Animal Care's Motion to Dismiss State Law Claims [#83] be GRANTED in part, and DENIED in part, dismissing LPI's claims for tortious interference and misappropriation of business value;

(2) LPI's Motion for Partial Dismissal, or in Alternative, for Summary Judgment on the issue of inventorship [#95] be DENIED;

(3) Mr. O'Connor's Motion to Dismiss [#101] be GRANTED in part, and DENIED in part, dismissing LPI's claim for misappropriation of business value and adding Mr. O'Connor as a defendant to LPI's claim for trade secret misappropriation; and

---

[10]  The pleadings are clear, however, that LPI has not pled facts in its Second Amended Counterclaims to support even a *prima facie* assertion of equitable tolling.   Nevertheless, particularly given the amount of litigation already focused on the pleadings in this case, it is more appropriate to consider these issues once the factual record is developed, rather than subject the Parties and this court to another round of amendments to the pleadings.

(4) For the purposes of clarity of the pleadings, LPI be directed to file a Third Amended Complaint consistent the court's rulings **with no other changes**, to which Animal Care and Mr. O'Connor would respond.[11]

DATED:  February 26, 2015                    BY THE COURT:


                                             s/Nina Y. Wang_____
                                             United States Magistrate Judge

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).